EDWIN B. PEACOCK, JR., PLAINTIFF, FOR THE BENEFIT OF THE TAXPAYERS OF THE CITY OF
CHARLOTTE v. GEORGE SHINN, INDIVIDUALLY; AND GEORGE SHINN SPORTS
OF FLORIDA, INC., CHARLOTTE HORNETS NBA LIMITED PARTNERSHIP,
SHINN ENTERPRISES, INCORPORATED; AND, CITY OF CHARLOTTE; AND,
AUDITORIUM-COLISEUM-CONVENTION CENTER AUTHORITY OF THE CITY
OF CHARLOTTE, DEFENDANTS

No. COA99-975

(Filed 15 August 2000)

1. **Constitutional Law— standing—taxpayer action— Charlotte Hornets basketball team**

Plaintiff had standing as a taxpayer to maintain a public interest taxpayer action against the City of Charlotte, George Shinn, and the Charlotte Hornets arising from the financial agreements for the construction of the Charlotte Coliseum and the use of the Coliseum by the Hornets where plaintiff alleged that he was a resident and taxpayer of Charlotte and attached documentation of extended correspondence which established that neither the City nor the Coliseum Authority intended to take action to recoup allegedly unlawful payments made pursuant to the agreements.

2. **Constitutional Law— North Carolina—payments not for a public purpose—Charlotte Hornets basketball team**

The trial court properly granted defendants' motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) a taxpayer claim that financial arrangements between George Shinn, the general partner of the Charlotte Hornets NBA Limited Partnership, and the Coliseum Authority for the City of Charlotte for use of the Charlotte Coliseum violated Article V, § 2 of the North Carolina Constitution in that payments to Shinn were not for a public purpose. The erection, maintenance, and operation of a public auditorium/coliseum, while not a necessary expense, has long been considered to be for a public purpose and the agreements here reveal a primary public purpose of economic development. The Coliseum Authority has discretion in the manner of implementation where the Authority's primary purpose is for the public benefit, despite an incidental private benefit.

3. **Constitutional Law— North Carolina—separate emoluments and privileges—Charlotte Hornets basketball team**

The trial court properly granted an N.C.G.S. § 1A-1, Rule 12(b)(6) motion to dismiss a taxpayer claim that payments from

PEACOCK v. SHINN

[139 N.C. App. 487 (2000)]

the City of Charlotte's Coliseum Authority to George Shinn, the general partner of the Charlotte Hornets NBA Limited Partnership, violated the prohibition in Article I, § 32 of the North Carolina Constitution on exclusive emoluments or privileges. For purposes of determining whether a benefit has been afforded in violation of the separate emoluments or privileges prohibition, a court must determine whether the benefit was given in consideration of public services, intended to promote the general public welfare, or whether the benefit was given for a private purpose benefitting an individual or select group. The purpose of the agreements under which these payments were made is to promote the public benefit by means of optimum use of the Coliseum.

4. **Cities and Towns— agreements between coliseum and professional basketball team—Local Government Bond Act— operating expenses**

The trial court properly granted a dismissal under N.C.G.S. § 1A-1, Rule 12(b)(6) of a claim that payments from the City of Charlotte Coliseum Authority to the general partner of the Charlotte Hornets NBA Limited Partnership violated the priority of payments provision of the Local Government Bond Act, N.C.G.S. § 159-47. Under the statute, "operating expenses" are appropriately paid first from the pool of Coliseum revenue and the payment of money to a third party under an agreement to secure the performance of events at the Coliseum is encompassed by the plain and ordinary meaning of "operating expenses." Whether the amounts are reasonable is not before the Court.

Appeal by plaintiff from order entered 25 May 1999 by Judge James E. Lanning in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 April 2000.

*Edwin B. Peacock, Jr., pro se, for plaintiff-appellant.*

*Perry, Patrick, Farmer & Michaux, P.A., by Roy H. Michaux, Jr., and John H. Carmichael, for defendant-appellees George Shinn, individually, George Shinn Sports of Florida, Inc., Charlotte Hornets NBA Limited Partnership and Shinn Enterprises Incorporated.*

*Assistant City Attorney Robert E. Hagemann, for defendant-appellee City of Charlotte.*

*Grier & Furr, P.A., by Joseph W. Grier, Jr., and K. Lane Klotzberger, for defendant-appellee Auditorium-Coliseum-Convention Center Authority.*

MARTIN, Judge.

Plaintiff Edwin B. Peacock, Jr., ("plaintiff"), a resident and taxpayer of the City of Charlotte, North Carolina, brought this action as a public interest taxpayer action for the benefit of all citizens and taxpayers of Charlotte. Briefly summarized, plaintiff alleges as follows:

In 1985, the City of Charlotte issued general obligation bonds to finance the construction of the Charlotte Coliseum. During the period beginning in March 1987 through December 1991, various agreements were entered into between the Auditorium-Coliseum-Convention Center Authority (the "Authority") for the City of Charlotte (the "City") and George Shinn ("Shinn") and George Shinn Sports, Inc., as general partner of the Charlotte Hornets NBA Limited Partnership ("Hornets") concerning the Hornet's use of the facility. On 6 November 1995, defendants George Shinn, George Shinn Sports of Florida, Inc., and Charlotte Hornets NBA Limited Partnership, (hereinafter collectively "the Shinn defendants") entered into a New Basketball Agreement (the "1995 Agreement") with the Authority for use of the Charlotte Coliseum for Hornets home basketball games. The Agreement required the Authority to pay the Shinn defendants 50% of the Coliseum parking, food, and beverage profits for Hornets home games. Pursuant to the Agreement, and with the City's consent, the Authority paid the Shinn defendants a total of $4,103,157.00 for Coliseum parking, food, and beverage profits for the time period 6 November 1995 through 30 June 1998.

The 1995 Agreement was amended on 13 April 1998 by an additional agreement (the "1998 Amending Agreement"), entered into between the Authority, George Shinn and Shinn Enterprises, Inc., as general partner of the Charlotte Hornets NBA Limited Partnership (hereinafter included within "the Shinn defendants") which requires, *inter alia,* the Authority to pay the Shinn defendants 20% of the first $2,000,000.00 of Coliseum profits, and 80% of the profits over this amount (the "Excess Funds"), regardless of whether the profits result from a Hornets home game. The 1998 Amending Agreement further

provides the Shinn defendants with the naming rights to the Coliseum and the right to retain the first $400,000.00 of annual naming rights revenue.

Plaintiff alleged (1) certain sections of the 1995 Agreement and the 1998 Amending Agreement are in violation of the "public purpose" requirements of the North Carolina Constitution, (2) certain sections of the 1995 Agreement create exclusive or separate emoluments or privileges for the Shinn defendants without the benefit of public service in violation of the North Carolina Constitution, and (3) certain sections of the 1995 Agreement and 1998 Amending Agreement require diversion of funds in violation of the North Carolina Local Government Bond Act, G.S. § 159, *et seq.* Plaintiff seeks relief in the form of repayment of the $4,103,157.00, plus interest, which the Authority paid to the Shinn defendants prior to 30 June 1998; repayment of any unlawful payments, plus interest, which the Authority paid to the Shinn defendants after 30 June 1998; an order prohibiting the Authority from making any such unlawful future payments; and an order taxing costs to the Shinn defendants and requiring their payment of reasonable attorneys' fees to the City.

Plaintiff filed his original complaint, naming only the Shinn defendants, on 16 October 1998. On 15 December 1998 the Shinn defendants answered plaintiff's complaint and filed motions to dismiss pursuant to G.S. § 1A-1, Rules 12(b)(6) for failure to state a claim upon which relief may be granted and 12(b)(7) for failure to join as necessary parties the City and the Authority. Plaintiff amended his complaint on 12 March 1999 to join the City and the Authority as defendants. The Shinn defendants renewed their motions to dismiss on 13 April 1999 following plaintiff's amendment of the complaint, and filed an additional motion to dismiss the amended complaint pursuant to Rule 12(b)(6). On 9 April 1999 the City and Authority filed Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted, including the basis that plaintiff lacks standing to bring this action.

The trial court entered an order on 25 May 1999 granting all motions to dismiss pursuant to Rule 12(b)(6) for "the failure of the plaintiff to state a claim upon which relief may be granted as to all defendants." Plaintiff appeals.

---

[1] Defendants asserted, in their motions to dismiss, that plaintiff lacks standing to maintain this action. A lack of standing is properly

challenged by a 12(b)(6) motion. *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 525 S.E.2d 441 (2000). The trial court's order granting defendants' Rule 12(b)(6) motions does not indicate whether standing was a grounds for dismissal and we must, therefore, address the issue of standing as subject matter jurisdiction exists only if a plaintiff has standing. Issues of subject matter jurisdiction may be raised at any time, including on appeal. *Union Grove Milling and Manufacturing Co. v. Faw*, 109 N.C. App. 248, 251, 426 S.E.2d 476, 478 (citations omitted), *affirmed*, 335 N.C. 165, 436 S.E.2d 131 (1993).

It is well-established that " 'a taxpayer [may] bring a taxpayer's action on behalf of a public agency or political subdivision for the protection or recovery of the money or property of the agency or subdivision in instances where the proper authorities neglect or refuse to act.' " *Guilford County Bd. of Comrs. v. Trogdon*, 124 N.C. App. 741, 747, 478 S.E.2d 643, 647 (1996), *disc. review denied*, 345 N.C. 753, 485 S.E.2d 52 (1997) (quotation omitted). In order to bring such an action, a taxpayer must show that he is a taxpayer of the particular public agency or political subdivision, and either, "(1) there has been a demand on and refusal by the proper authorities to institute proceedings for the protection of the interests of the agency or subdivision; or (2) a demand on the proper authorities would be useless." *Id.* (citation omitted).

In the present case, plaintiff alleges that he is a resident and taxpayer of the City of Charlotte, and he has attached documentation of his extended correspondence with attorneys for both the City and the Authority, the State Treasurer, and the Special Deputy Attorney General to the North Carolina Local Government Commission. In such correspondence, plaintiff informed the City and the Authority of his belief that the 1995 Agreement and 1998 Amending Agreement are unlawful for the reasons plaintiff has alleged in this action, and that he intended to file a public interest taxpayer suit should the City and Authority not seek repayment of funds paid pursuant to the Agreements. Attorneys for both the City and the Authority responded to plaintiff, informing him that neither believed the Agreements to be unlawful, and the correspondence establishes that neither the City nor the Authority intended to take action to recoup allegedly unlawful payments made pursuant to the Agreements. We hold such allegations sufficient to establish plaintiff's standing as a taxpayer to maintain this action.

## II.

Plaintiff's second, third, and fourth assignments of error allege that the trial court improperly dismissed each of his three substantive claims for relief for failure of the complaint and amended complaint to state any claim upon which relief may be granted. A motion to dismiss a complaint pursuant to G.S. § 1A-1, Rule 12(b)(6) challenges the legal sufficiency of the complaint, taking all of its factual allegations as true. *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979). A complaint cannot withstand a motion to dismiss where an insurmountable bar to recovery appears on its face. *Al-Hourani v. Ashley*, 126 N.C. App. 519, 521, 485 S.E.2d 887, 889 (1997) (citation omitted). "Such an insurmountable bar may consist of an absence of law to support a claim, an absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim." *Id.* (citation omitted).

### A. "Public Purpose"

[2] In his first claim for relief, plaintiff alleges the provisions of the 1995 Agreement and 1998 Amending Agreement requiring the Authority to pay the Shinn defendants 50% of Coliseum parking, food, and beverage profits, as well as the "Excess Funds" and Hornets' yearly Coliseum "Marketing Expenses" violate article V, § 2 of the North Carolina Constitution in that such payments are not made for a "public purpose." Article V, § 2 provides, in relevant part, that state and local governments may only exercise the power of taxation for "public purposes" and may only "contract with and appropriate money to any person, association or corporation for the accomplishment of public purposes." N.C. Const. art. V, § 2(7).

In interpreting the "public purpose" language of this section, our Supreme Court has held that the two guiding principles for determining whether a municipality has acted with a public purpose are, (1) whether the action " 'involves a reasonable connection with the convenience and necessity of the particular municipality,' " and (2) whether the action "benefits the public generally, as opposed to special interests or persons." *Maready v. City of Winston-Salem*, 342 N.C. 708, 722, 467 S.E.2d 615, 624 (1996) (quotations omitted). "The determination of whether a particular function or activity constitutes a public purpose is a legal issue to be decided by the court." *Madison Cablevision Inc. v. City of Morganton*, 325 N.C. 634, 653, 386 S.E.2d 200, 211 (1989).

Whether an activity involves a reasonable connection to community needs may be evaluated "by determining how similar the activity is to others which this Court has held to be within the permissible realm of governmental action." *Maready*, 342 N.C. at 722, 467 S.E.2d at 624. Our Supreme Court has recognized that cases addressing which activities should be classified as having a public purpose "demonstrate the expanding scope of the concept of 'public purpose' in a modern society which ' 'requires governmental operation of facilities which were once considered exclusively private enterprises . . . and necessitates the expenditure of tax funds for purposes which, in an earlier day, were not classified as public.' ' " *Madison Cablevision Inc.*, 325 N.C. at 651, 386 S.E.2d at 210 (quotation omitted).

As early as 1925, our Supreme Court determined that "[t]he erection of a public auditorium, while it may not be a necessary expense, is to our minds undoubtedly a public purpose . . . ." *Adams v. City of Durham*, 189 N.C. 232, 126 S.E. 611, 612 (1925). Moreover, the acquisition, establishment *and operation* of auditoriums, playgrounds and recreation centers, while not necessary expenses, have been held to be, as a matter of law, public purposes. *City of Greensboro v. Smith*, 241 N.C. 363, 367, 85 S.E.2d 292, 295 (1955) (citations omitted) (emphasis added); *see also Madison Cablevision Inc.*, 325 N.C. at 651, 386 S.E.2d at 210 (governmental functions held to be for public purpose include "municipal ownership of facilities used for communication and recreation [including parks, auditoriums, libraries, and fairs] . . . ."); *Nash v. Town of Tarboro*, 227 N.C. 283, 287, 42 S.E.2d 209, 212 (1947) (listing expenditures which Supreme Court has held to be for public purpose as including market houses, municipal buildings, playgrounds, auditoriums, hospitals, railroads, fairs, and airports); *Henderson v. City of Wilmington*, 191 N.C. 269, 132 S.E. 25, 30 (1926).

Under the second prong of the public purpose guidelines, activities are considered constitutional so long as they *primarily* benefit the public and not a private party:

'It is not necessary, in order that a use may be regarded as public, that it should be for the use and benefit of every citizen in the community.' *Briggs v. City of Raleigh*, 195 N.C. 223, 226, 141 S.E. 597, 599-600. Moreover, an expenditure does not lose its public purpose merely because it involves a private actor. Generally, if an act will promote the welfare of a state or a local government and its citizens, it is for a public purpose.

*Maready*, 342 N.C. at 724, 467 S.E.2d at 625; *see also Wood v. Commissioners of Oxford*, 97 N.C. 227, 231, 2 S.E. 653, 655 (1887). In holding that legislation authorizing local governments to make economic development incentive grants to private businesses did not violate article V, § 2, the *Maready* court noted that, "[w]hile private actors will necessarily benefit from the expenditures authorized, such benefit is merely incidental. It results from the local government's efforts to better serve the interests of its people." *Maready*, 342 N.C. at 725, 467 S.E.2d at 625-26.

Applying these principles to the present case, plaintiff has failed, as a matter of law, to state a claim for relief under N.C. Const. art. V, § 2. Plaintiff has incorporated both the 1995 Agreement and the 1998 Amending Agreement into his complaint, and we therefore consider them in determining whether they are for a public purpose. Both plaintiff's allegations and provisions of the agreements themselves establish that the agreements are for the City's operation of a public auditorium/coliseum. The precedent cited above establishes unequivocally that the erection, maintenance, and operation of such a facility, while not a necessary expense, has long been considered by our Supreme Court to be for a public purpose. Thus, on the face of plaintiff's complaint, the first prong of the guidelines for determining the agreements' constitutional validity is met.

As to the second prong, plaintiff alleges the challenged provisions of the 1995 Agreement and 1998 Amending Agreement were incorporated to subsidize the Shinn defendants, increase the Shinn defendants' own revenue, and make the Hornets a more competitive basketball team. Even taking such allegations as true, however, they are insufficient to state a claim under N.C. Const. art. V, § 2; the fact that a private individual benefits from a particular municipal transaction is insufficient to make out a claim under article V, § 2. *See Wood*, 97 N.C. at 231, 2 S.E. at 655. Rather, the test is whether the transaction will promote the welfare of the local government and results from the local government's efforts to better serve the interests of its people. *See Maready*, 342 N.C. at 724, 467 S.E.2d at 625.

In the present case, the 1998 Amending Agreement states that the "parties desire to promote the more efficient and profitable ownership, operation, and management of the Coliseum . . ." and that its purpose "is to establish a framework for an operating arrangement of the Coliseum to maximize the profitability and use of the Coliseum . . . ." The face of the 1995 Agreement likewise reveals a pur-

pose of profitable use of the Coliseum by means of renting the Coliseum "for the purpose of staging NBA basketball games . . . ." In short, the face of the agreements themselves reveal a primary public purpose of the City's economic development through use of the Coliseum by a successful, competitive home basketball team. "Economic development has long been recognized as a proper governmental function." *Maready*, 342 N.C. at 723, 467 S.E.2d at 624 (citation omitted). Here, as in *Maready*, a private party ultimately conducts activities which, while providing incidental private benefit, serve a primary public goal. Despite the Shinn defendants' benefit from the provisions of the agreements which plaintiff has singled out, where the Authority's primary purpose is for the public benefit, the Authority has discretion as to the manner of implementation.

The face of plaintiff's complaint, along with the incorporated agreements, when all allegations are taken as true, not only reveals an absence of facts to support a claim under N.C. Const. art. V, § 2, but also discloses facts which necessarily defeat the claim. The claim was properly dismissed. *See Al-Hourani*, 126 N.C. App. at 521, 485 S.E.2d at 889.

### B.  "Exclusive or separate emoluments or privileges"

[3] In his second claim for relief, plaintiff alleges that the provisions of Sections 11.1 and 11.2 (payment of parking profits) and Sections 13.1 and 13.2 (payment of food and beverage concession profits) of the 1995 Agreement requiring the Authority to pay the Shinn defendants 50% of Coliseum parking, food, and beverage profits violate the prohibition on exclusive or separate emoluments or privileges found in article I, § 32 of the North Carolina Constitution. Article I, § 32 provides that "[n]o person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services."

Much of the case law interpreting article I, § 32 addresses challenges to statutes providing exemptions or benefits to certain individuals or select groups. In addressing whether a particular statute violates article I, § 32, courts have applied a two-part test to the exemption or benefit: whether, (1) the exemption or benefit is intended to promote the general welfare rather than the benefit of the individual, and (2) there is a reasonable basis for the legislature to conclude that the granting of the exemption or benefit serves the public interest. *Crump v. Snead*, 134 N.C. App. 353, 357, 517 S.E.2d 384, 387, *disc. review denied*, 351 N.C. 101, 541 S.E.2d 143 (1999)

(quoting *Town of Emerald Isle v. State*, 320 N.C. 640, 654, 360 S.E.2d 756, 764 (1987)).

Thus, in determining whether a benefit has been afforded in violation of article I, § 32, a court must determine whether the benefit was given in consideration of public services, intended to promote the general public welfare, or whether the benefit was given for a private purpose, benefitting an individual or select group. For the same reasons stated in part A of this opinion, we conclude that the purpose of the agreements, all provisions included, is to promote the public benefit by means of optimum use of the Coliseum. Thus, considering all of the allegations of the complaint, including the contents of the 1995 Agreement which is incorporated in its entirety, it is apparent as a matter of law that the Agreement, including the provisions contested by plaintiff, was intended to promote the public benefit and plaintiff's second claim must fail on its face, even though a benefit resulted, as well, to the Shinn defendants. Therefore, defendants' Rule 12(b)(6) motion to dismiss was properly allowed.

## C. Local Government Bond Act

**[4]** Plaintiff's third claim for relief alleges Sections 11.1 and 11.2 (payments for parking profits) and Sections 13.1 and 13.2 (payments of food and beverage concession profits) of the 1995 Agreement and Section 3.3.3 (payments for Hornets "marketing expenses") of the 1998 Amending Agreement violate the Local Government Bond Act ("Bond Act"), G.S. § 159-43 to 159-79. Specifically, plaintiff argues that any payments made to the Shinn defendants pursuant to these provisions violate the priority of payments outlined in G.S. § 159-47, providing, *inter alia*, that,

(a) The revenues of a utility or public service enterprise owned or leased by a unit of local government shall be applied in accordance with the following priorities:

(1) First, to pay the operating, maintenance, and capital outlay expenses of the utility or enterprise.

(2) Second, to pay when due the interest on and principal of outstanding bonds issued for capital projects that are or were a part of the utility or enterprise.

(3) Third, for any other lawful purpose.

N.C. Gen. Stat. § 159-47 (1999).

Plaintiff's complaint and amended complaint allege that the Coliseum is a "public service enterprise" subject to the Bond Act; that the agreements at issue require the Authority to pay money to the Shinn defendants, and that the Authority has made such payments; that the required payments have been classified as "revenue sharing" in Authority monthly financial statements, auditors' reports, and annual proposed budgets; that general obligation bonds to construct and equip the Coliseum were issued by the City in 1985, were refunded in 1986, and again in 1992; and that these general obligation bonds are subject to the Bond Act.

Defendants argue, however, that payments made to the Shinn defendants under the agreements constitute "operating expenses" which, under G.S. § 159-47(a)(1), are appropriately paid first from the pool of Coliseum revenue. Defendants argue that such payments can only be characterized as "operating expenses" where the Authority must have freedom to enter into leases and performance contracts with prospective performers, such as the Hornets, in order to operate the Coliseum in the manner in which it was intended.

The phrase "operating expenses" has not been construed by the courts of this State within the context of the Bond Act. We must determine, applying the applicable canons of construction, whether "operating expenses" within the meaning of G.S. § 159-47(a)(1) was intended by the legislature to encompass money paid to a third party under an agreement to secure the performance of events at a Coliseum. *See State ex rel. Utilities Com'n v. Thornburg*, 325 N.C. 463, 475, 385 S.E.2d 451, 457 (1989) (where statutory scheme of utility regulation does not contain a definition of "reasonable operating expenses" within meaning of statute, interpretation of statute necessary to determine whether Commission exceeded authority in allowing recovery of certain costs as reasonable operating expense). The interpretation of statutory language is a matter of law, and thus, appropriately resolved upon a Rule 12(b)(6) motion. *See Taylor Home of Charlotte Inc. v. City of Charlotte*, 116 N.C. App. 188, 195, 447 S.E.2d 438, 443, *disc. review denied*, 338 N.C. 524, 453 S.E.2d 170 (1994).

The primary purpose of statutory interpretation is to give effect to the intent of the legislature, and "[w]here a statutory provision is clear and unambiguous, it must be interpreted in accordance with its plain and ordinary meaning." *Medical Mutual Ins. Co. of North Carolina v. Mauldin*, 137 N.C. App. 690, 696, 529 S.E.2d 697, 701 (2000) (citation omitted); *see also Patel v. Stone*, 138 N.C. App. 693,

531 S.E.2d 879 (2000) (citation omitted) (consulting dictionary for plain and ordinary meaning of statutory term, noting "[w]ords in the statute must be taken in their plain and ordinary meaning unless there is something in the statute requiring a different interpretation.").

In the present case, the legislature set forth the purpose of the Bond Act in G.S. § 159-43: "It is the intent of the General Assembly by enactment of this Article to prescribe a uniform system of limitations upon and procedures for the exercise by all units of local government in North Carolina of the power to borrow money secured by a pledge of the taxing power." N.C. Gen. Stat. § 159-43(b). Moreover, sections 6 and 7 of the 1987 Session Laws, c. 796, provided that,

> [t]his act shall be construed liberally to effectuate the legislative intent and the purposes as complete and independent authority for the performance of each and every act and thing authorized by this act, and all powers granted shall be broadly interpreted to effectuate the intent and purposes and not as a limitation of powers.

1987 N.C. Sess. Laws, c. 796.

With the backdrop of the legislature's intent to provide an appropriate framework for local government use of bonds, to be interpreted liberally and not as a limitation of powers, we turn to the plain meaning of "operating expenses." According to The American Heritage College Dictionary (3d. ed. 1997), the term "operating" means "to perform a function; work . . . to control the functioning of; run . . . to conduct the affairs of; manage. . . ." An "expense" is defined as "something spent to attain a goal or accomplish a purpose; an expenditure of money. . . ." Moreover, according to Black's Law Dictionary (7th ed. 1999), the phrase "operating expense" is defined as "[a]n expense incurred in running a business and producing output."

Given these definitions, it is apparent that the plain and ordinary meaning of the phrase "operating expenses" encompasses money paid to a third party under an agreement to secure the performance of events at the Coliseum. The Authority's duty to operate the Coliseum may certainly be classified as "controlling the functioning of" the Coliseum or "managing the affairs of" the Coliseum. The money paid to performers necessary to "attain this goal" or "accomplish this purpose" is clearly an "expense." Moreover,

the paying of money to secure performances in the Coliseum, which, indeed, is an integral part, if not the sole purpose of, such a facility, is "[a]n expense incurred in running" the Coliseum and "producing output" from the Coliseum, consistent with the ordinary meaning of the phrase "operating expense" as defined by Black's Law Dictionary.

Moreover, because the securing of performances for the Coliseum is a vital part of the functioning, operation, and profitability of the Coliseum, we do not construe the legislative intent of G.S. § 159-47 as requiring that the Authority pay the principal and interest on Coliseum bonds prior to having the authorization or power to take such steps as are necessary to attract performances and to generate profits from the Coliseum. *See State ex rel. Utilities Com'n v. Thornburg*, 325 N.C. at 477, 385 S.E.2d at 459 (where narrow construction of "operating expense" element of regulatory act would frustrate purposes of promoting adequate utility services, term should be liberally interpreted and applied). Therefore, construing the phrase "operating expenses" liberally in order to effectuate legislative intent, we hold, as a matter of law, that the money paid to the Shinn defendants under the agreements falls within the ordinary meaning of the phrase "operating expenses." Whether the amounts paid to the Shinn defendants under the agreements are, in fact, reasonable is not an issue properly before us; the legislature did not include the term "reasonable" to modify "operating, maintenance, and capital outlay expenses" as used in the statute. Thus, we conclude only that such payments fall within the classification of the operating expenses of the Coliseum.

The order of the trial court dismissing plaintiff's claims pursuant to Rule 12(b)(6) is hereby affirmed.

Affirmed.

Judges LEWIS and WALKER concur.