JERRY ALAN REESE, AS A TAXPAYER AND CITIZEN IN AND OF MECKLENBURG COUNTY, NORTH CAROLINA, ON BEHALF OF HIMSELF AND ALL OTHER TAXPAYERS AND CITIZENS OF MECKLENBURG COUNTY, PLAINTIFF v. MECKLENBURG COUNTY, NORTH CAROLINA; AND KNIGHTS BASEBALL, LLC, DEFENDANTS

No. COA08-1417

(Filed 3 November 2009)

**1. Counties— bonds—professional baseball stadium**

The County's use of the proceeds of a bond issue to acquire land for a professional baseball stadium complied with N.C.G.S. § 159-48(c)(4b). Since the County is authorized to issue bonds for the construction of stadiums and arenas, the purchase of land for that use is a county corporate purpose under the statute.

**2. Counties— professional baseball stadium—acquisition and use of land**

The County's statutory authority to acquire and use land includes the operation of a proprietary professional baseball stadium. The fact that the County chose to achieve the goal of erecting a downtown baseball stadium by leasing the land and having a private party shoulder the bulk of the expense for the stadium does not mean that the transaction fails to serve a public purpose.

**3. Counties— bonds—public parks—funds restricted—particular property not restricted**

Proposed ballot language for public park bonds was not intended to preclude use of property as a professional baseball stadium and there was not a substantial deviation from the purpose for which the bonds were proposed.

**4. Counties— professional baseball stadium—leases—statutory authority**

Leases of property by a county for a professional baseball stadium were not voided based on the argument that N.C.G.S. § 160A-266 and -272 do not expressly allow the leasing of real property.

**5. Counties— professional baseball club—lease—notice of terms**

The County properly published notice of the terms of a lease with a professional baseball club where plaintiff argued that the transaction of which notice was given substantially differed from the final version. The final version did not alter any of the material obligations between the parties.

**6. Injunctions— preliminary—no showing of success on merits**

The trial court correctly denied a preliminary injunction in a case involving a county's transaction with a professional baseball club. Plaintiff did not show a likelihood of success on the merits.

Appeal by plaintiff from order filed 28 July 2008 by Judge W. David Lee in Mecklenburg County Superior Court. Heard in the Court of Appeals 20 April 2009.

*Jerry Alan Reese, pro se.*

*Robinson, Bradshaw & Hinson, P.A., by A. Ward McKeithen and Jonathan C. Krisko, for defendant-appellee Mecklenburg County, North Carolina.*

*Hamilton Moon Stephens Steele & Martin, PLLC, by Jackson N. Steele, for defendant-appellee Knights Baseball, LLC.*

STEELMAN, Judge.

The trial court properly denied plaintiff's motion for judgment on the pleadings and granted defendants' motions for judgment on the pleadings. The lease of property acquired under the Landbanking Statute (N.C. Gen. Stat. § 159-48(c)(4b)) for a professional baseball

stadium is permitted as a county corporate purpose. Recreational facilities do not lose their public purpose merely because a private party is involved. When the 2004 Park Bond only restricted the expenditure of bond proceeds on a stadium for professional baseball, and the disbursed money was subsequently repaid, there was no substantial deviation from the purpose for which the bonds were approved. Mecklenburg County, by special legislation, has authority to lease its property. None of the changes to the 18 March 2008 Lease altered any material conditions of the lease, and the notice published prior to December 2007 was legally sufficient. Plaintiff did not show a likelihood of success on the merits of his case, and the trial court properly denied his motion for a preliminary injunction.

## I. Factual and Procedural Background

Charlotte's Center City is divided into four quadrants by two intersecting streets, Trade Street and Tryon Street. These four quadrants are called "Wards." This case pertains to a 7.8 acre tract (the Property) in Third Ward and challenges the validity of a ground lease between Mecklenburg County (County) and Knights Baseball (Knights), a AAA minor league baseball franchise.

In August 1999, the Mecklenburg County Board of Commissioners (Board) adopted a resolution calling for a voter referendum on the proposed issuance of general obligation bonds in a maximum amount of $220,000,000.00 for the purpose of "providing land for present or future county corporate, open space, community college, and public school purposes . . . ." On 2 November 1999, the referendum was approved by the voters of Mecklenburg County, and County caused bonds (the 1999 Land Bonds) to be issued.

On 9 October 2001, the Board adopted a resolution to authorize the acquisition of the Property using $24,000,000.00 of the proceeds of the 1999 Land Bonds. County purchased the Property with the intent to use it for a public park. At the time of purchase, the "2010 Center City Vision Plan" (2010 Vision Plan) designated the Property to be used as a public park. On 13 July 2004, County Manager Harry L. Jones (Jones) recommended to the Board that a bond referendum be submitted to the voters of Mecklenburg County, authorizing $69,000,000.00 in general obligation bonds for parks and recreation facilities. Jones recommended that $24,000,000.00 in bond proceeds be used to develop a park on the Property.

At the 10 August 2004 Board meeting, Donald C. Beaver (Beaver), CEO of the Knights, asked the Board to consider making the Property

available to the Knights for use as a baseball stadium. The Board voted to refer Beaver's request to the Board's Baseball Committee for further consideration. On 2 November 2004, the voters approved the $69,000,000.00 bond referendum (2004 Park Bonds) upon the following ballot question:

> SHALL the order authorizing $69,000,000 of bonds secured by a pledge of the faith and credit of the County of Mecklenburg to pay capital costs of providing park and recreation facilities (other than a stadium for professional baseball), including the acquisition and construction of new park and recreation facilities, the improvement and expansion of existing park and recreation facilities and the acquisition and installation of furnishings and equipment and the acquisition of interests in real property required therefor, and a tax to be levied for the payment thereof, be approved?

On 19 January 2005, the Board adopted the "Parks and Recreation Approved in November 2, 2004 Referendum Capital Project Ordinance," (Park Bond Ordinance) to provide funds for improvements to existing park facilities and "Public/Private projects excluding a stadium for professional baseball." On 20 December 2005, the Board adopted an amendment to the Park Bond Ordinance, which appropriated an additional $5,000,000.00 from the 2004 Park Bonds.

In 2005 and early 2006, County spent a total of $366,280.23 from the 2004 Park Bonds consisting approximately of $290,000.00 for master site plan design work for a park on the Property and approximately $78,000.00 for temporary beautification on the Property, including grading and lawn seeding. On 8 November 2006, the Board approved a "land swap" transaction (Land Swap), which provided for the purchase and sale of several pieces of real property within the City of Charlotte (City). The Board further directed Jones to "negotiate and bring back a proposed interlocal agreement with the City of Charlotte for Board approval," which would make the Property available for a professional baseball stadium. On 19 December 2006, the Board adopted another amendment to the Park Bond Ordinance, appropriating an additional $19,000,000.00 from the 2004 Park Bonds. That same day, the Board authorized its Chairman to execute a nonbinding Memorandum of Understanding with the Knights for the development of a minor league professional baseball stadium.

A Memorandum of Understanding pertaining to site development, and stadium design and construction was executed by the Knights on

25 January 2007 and the County on 31 January 2007. On 14 May 2007, County and City entered into a "Brooklyn Village/Knights Baseball Stadium Interlocal Cooperation Agreement," which provided:

> Within 120 days after City transfers title to the Conveyed Properties to the County, the County and the Knights shall [enter] into a legally binding Lease Agreement to develop the Baseball Stadium . . . .

On 10 July 2007, the Board amended the Park Bond Ordinance to reimburse the funds issued from the 2004 Park Bonds, which were "expended on the Third Ward Park site that is under consideration to be leased for a minor league baseball stadium," by transferring $370,000.00 from County's general fund.

In September 2007, City, at the request of County, amended the 2010 Vision Plan to provide for a public park at another site and a professional baseball stadium on the Property. On 20 November 2007, County and the Knights executed a Development and Economic Grant Agreement (Development Agreement) detailing specifics on how the baseball stadium would be developed, operated, and financed. The Development Agreement provided that County would have no obligation to enter into the Lease until nine specific conditions had been satisfied, any of which could be waived in writing by County. On 21 December 2007, County published a legal notice of its intent to enter into the lease in *The Charlotte Observer*.

By 18 March 2008, seven of the nine conditions had been satisfied; leaving two conditions as follows:

> (i) the County has secured record title or has received assurances reasonably satisfactory to the County that it will be able to secure title to all land required for the Third Ward Park;
>
> . . .
>
> (viii) all conditions precedent to the closing of the Project Financing have been met and the Project Financing is prepared to be closed; and

On 18 March 2008, the Board adopted a resolution, which permitted the waiver of the remaining two conditions (i and viii) precedent to executing the lease between County and the Knights. The resolution called for the lease to be amended by adding a new section 3.2, which would allow the remaining two conditions (i and viii) to be satisfied after execution of the lease but before the Knights began construc-

REESE v. MECKLENBURG CNTY.

[200 N.C. App. 491 (2009)]

tion on the baseball stadium. That same day, County and the Knights entered into a lease (the Lease), which conveyed a leasehold interest in the Property for an initial term of forty-nine years with two consecutive renewal terms of twenty-five years each. The Knights were to pay nominal rent of $1.00 per year and construct a stadium with a minimum of 10,000 seats, and must operate its minor league baseball franchise on the Property. The Knights would own all of the improvements constructed on the Property during the term of the Lease, and the improvements would revert to County at the end of the Lease. On 20 March 2008, the Lease was filed in the Mecklenburg County Register in Book 23527, pages 450-622.

On 25 March 2008, plaintiff filed a Verified Complaint and Motion for a Temporary Restraining Order and Preliminary Injunction in Mecklenburg County Superior Court against County and the Knights (collectively defendants). On 2 April 2008, plaintiff filed an amended complaint seeking a judgment that the Lease be declared void, a temporary restraining order prohibiting defendants from performing the Lease, a preliminary injunction prohibiting defendants from performing the Lease, and a permanent injunction prohibiting defendants from performing the Lease. On 7 April 2008, this case was designated as an exceptional case by the Chief Justice pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts. On 24 April 2008, County and the Knights filed answers to plaintiff's amended complaint. On 8 May 2008, defendants filed Motions for Judgment on the Pleadings. On 9 May 2008, plaintiff filed a Notice of Lis Pendens on the Property. On 13 May 2008, defendants filed Amendments to Motions for Judgment on the Pleadings.

On 13 May 2008, the trial court entered an order denying plaintiff's motion for a preliminary injunction. On 21 May 2008, plaintiff filed a Motion for Judgment on the Pleadings. On 28 July 2008, the trial court filed an order, denying plaintiff's motion for judgment on the pleadings but granting defendants' motions, and dismissing plaintiff's amended complaint with prejudice and cancelling plaintiff's Notice of Lis Pendens.

Plaintiff appeals.

## II.  Judgment on the Pleadings

Plaintiff contends that the trial court erred in denying his motion for judgment on the pleadings and in granting defendants' motions for judgment on the pleadings. We disagree.

Under Rule 12(c) of the North Carolina Rules of Civil Procedure, judgment on the pleadings is "appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain. Judgments on the pleadings are disfavored in law, and the trial court must view the facts and permissible inferences in the light most favorable to the non-moving party." *Shehan v. Gaston Cty.*, 190 N.C. App. 803, 806, 661 S.E.2d 300, 303 (2008) (citing *Carpenter v. Carpenter*, 189 N.C. App. 755, 757, 659 S.E.2d 762, 765 (2008)). In deciding such a motion, the trial court looks solely to the pleadings. *Wilson v. Development Co.*, 276 N.C. 198, 206, 171 S.E.2d 873, 878 (1970). The trial court can only consider facts properly pleaded and documents referred to or attached to the pleadings. *Id.*, 171 S.E.2d at 878-79 (citations omitted).

### A. Standard of Review

This Court reviews *de novo* a trial court's ruling on motions for judgment on the pleadings. *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335 (2005) (citations omitted), *disc. review denied*, 360 N.C. 78, 623 S.E.2d 263 (2005). Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court. *Peninsula Prop. Owners Ass'n v. Crescent Res., LLC*, 171 N.C. App. 89, 92 614 S.E.2d 351, 353 (2005) (citing *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)), *appeal dismissed and disc. review denied*, 360 N.C. 177, 626 S.E.2d 648 (2005).

### B. North Carolina County Landbanking Statute

[1] In his first argument, plaintiff contends that the Property was acquired with proceeds of a bond issue approved by voters in 1999 under the provisions of N.C. Gen. Stat. § 159-48(c)(4b), and that the use of this property for a professional baseball stadium does not comply with the statute. We disagree.

N.C. Gen. Stat. § 159-48(c) provides:

(c) Each county is authorized to borrow money and issue its bonds under this Article in evidence of the debt for the purpose of, in the case of subdivisions (1) through (4b) of this subsection, paying any capital costs of any one or more of the purposes . . . :

(4b) Providing land for present or future county corporate, open space, community college, and public school purposes.

N.C. Gen. Stat. § 159-48(c)(4b) (2007). This provision allows for the acquisition and holding of land for both present and future county corporate purposes.

Plaintiff contends that subsection (4b) limits the acquisition of land under that provision to the specific four purposes set forth in the statute. He then further argues that these four purposes are further restricted to those set forth in N.C. Gen. Stat. § 153A-158 (use by county agency); N.C. Gen. Stat. § 153A-158.1 (use by schools); N.C. Gen. Stat. § 153A-158.2 (use by a community college); N.C. Gen. Stat. § 160A-403 (open space and conservation easements); and Article XV, section 5 of the North Carolina Constitution (nature and historic preservation). We hold that the provisions of N.C. Gen. Stat. § 159-48(c)(4b) are not restricted by the statutes enumerated by plaintiff. Rather, resolution of this issue hinges upon whether "county corporate purposes" is broad enough to encompass the use of the Property as a professional baseball stadium. We hold that it is.

Instead of looking for guidance as to the meaning of "county corporate purposes" in varied and different statutes pertaining to local governmental units, we look to the same statute that contains the landbanking provision in question. N.C. Gen. Stat. § 159-48(b) provides:

> (b) Each county and city is authorized to borrow money and issue its bonds under this Article in evidence thereof for the purpose of paying any capital costs of any one or more of the following:

> (13) Providing parks and recreation facilities, including without limitation land, athletic fields, parks, playgrounds, recreation centers, shelters, stadiums, arenas, permanent and temporary stands, golf courses, swimming pools, wading pools, marinas, and lighting.

Clearly if a county is authorized to issue bonds for the construction of stadiums and arenas, then the purchase of land for such an objective is a county corporate purpose under the provisions of N.C. Gen. Stat. § 159-48(c)(4b).

This argument is without merit.

### C. Property for Park and Recreation Purposes

[2] In his second argument, plaintiff contends that County only had statutory authority to purchase the Property for parks and recre-

ational programs. Plaintiff argues that County's authority to acquire and use land under N.C. Gen. Stat. §§ 160A-352; -353, and N.C. Gen. Stat. § 153A-444 does not include the operation of a professional baseball stadium because it is a proprietary venture for pecuniary gain. We disagree.

The trial court concluded:

18. The County's acquisition and use of the Property for a stadium is within its authority under N.C.G.S. § 160A-352 and -353 and within its authority to acquire real property under N.C.G.S. § 153A-158 and to contract with private parties to carry out any public purpose the county is authorized by law to engage in under N.C.G.S. § 153A-449.

N.C. Gen. Stat. § 160A-353, which is made applicable to counties by N.C. Gen. Stat. § 153A-444, empowers counties to acquire real property and appropriate funds for parks and recreational purposes. N.C. Gen. Stat. § 160-353 (2007); *see also* N.C. Gen. Stat. § 153A-444 (2007) (A county may establish parks and provide recreational programs pursuant to Chapter 160A, Article 18). Recreation is defined as "activities that are diversionary in character and aid in promoting entertainment, pleasure, relaxation, instruction, and other physical, mental, and cultural development and leisure time experiences." N.C. Gen. Stat. § 160A-352 (2007). As noted above, N.C. Gen. Stat. § 159-48 provides that counties are authorized to borrow money and issue bonds for the purpose of paying capital costs of "[p]roviding parks and recreation facilities, including without limitation land, athletic fields, parks, playgrounds, recreation centers, shelters, *stadiums*, arenas, permanent and temporary stands, golf courses, swimming pools, wading pools, marinas, and lighting." N.C. Gen. Stat. § 159-48(b)(13) (2007) (emphasis added). This statutory provision expressly provides that parks and recreation facilities include stadiums.

Plaintiff cites *Britt v. Wilmington*, 236 N.C. 446, 73 S.E.2d 289 (1952) for the proposition that the operation of a professional baseball franchise is not a legitimate and traditional governmental function. Plaintiff asserts this case holds that a city "may not lease its system of on-street parking meters for operation by a private corporation or individual." The holding in *Britt* was that the city's parking management program was unlawful because the city combined its on-street and off-street parking programs, and the collected on-street

fines were not allocated to a proper use. *Britt* does not address a municipality's power to lease public property to private parties.

We further note neither N.C. Gen. Stat. §§ 160A-352; -353, nor N.C. Gen. Stat. § 153-444 prohibit recreational facilities from being operated for a pecuniary gain. The statutes do not require, as plaintiff suggests, that County receive generated revenues from or participate in the commercial development of the professional baseball stadium for it to be considered a use for a public purpose. In fact, counties are given wide latitude to contract with private parties "in order to carry out any public purpose that the county is authorized by law to engage in." N.C. Gen. Stat. § 153A-449 (2007). In *Peacock v. Shinn*, this Court held that agreements between the City of Charlotte and the Charlotte Hornets for the Hornets to use the Charlotte Coliseum constituted a public purpose. 139 N.C. App. 487, 533 S.E.2d 842, *appeal dismissed and disc. review denied*, 353 N.C. 267, 546 S.E.2d 110 (2000). In *Peacock*, we stated that in determining whether a municipality has acted with a public purpose, the two relevant questions were: "(1) whether the action 'involves a reasonable connection with the convenience and necessity of the particular municipality,' and (2) whether the action 'benefits the public generally, as opposed to special interests or persons.'" *Id.* at 492, 533 S.E.2d at 846 (citing *Maready v. City of Winston-Salem*, 342 N.C. 708, 722, 467 S.E.2d 615, 624 (1996)). As to the first question, we held that operation of a public auditorium/coliseum has long been considered to be for a public purpose. *Id.* at 493, 533 S.E.2d at 847. As to the second question, we held that use of the Coliseum by a successful, competitive home basketball team benefitted the general public. *Id.* at 495, 533 S.E.2d at 848.

We believe this same reasoning applies to the construction of a stadium for a professional baseball team. The fact that County chose to achieve the goal of erecting a downtown baseball stadium by the lease of land, and having a private party shoulder the bulk of the expense for the stadium, does not mean that the transaction fails to serve a public purpose. The lease transaction achieves the proper governmental purpose of erecting a stadium as a recreational facility.

This argument is without merit.

### D. *Restriction on the Use of Property*

[3] In his third argument, plaintiff contends that the proposed ballot language for the 2004 Park Bonds, which was adopted by the Board and approved by voters, was intended to preclude the use of the Property as a professional baseball stadium. We disagree.

At the time of the 2004 Park Bonds authorization, the 2010 Vision Plan called for the Property to be used as a public park. The 2004 Park Bond language submitted to voters read: "SHALL the order authorizing $69,000,000 of bonds secured by a pledge of the faith and credit of the County of Mecklenburg to pay capital costs of providing park and recreation facilities (other than a stadium for professional baseball) . . . ." The County Manager proposed that $24,000,000.00 of the bond proceeds be used to build a public park on the Property. Plaintiff argues that the 2004 Park Bonds Authorization imposes a limitation on the use of the Property solely for a public park.

The trial court concluded:

22. The expenditure of $366,280.23 in proceeds from bonds issued pursuant to the 2004 Park Bond Authorization for park planning and limited grading and seeding on the Property when the County planned to use the Property for a public park, and the subsequent replenishment of such proceeds by transfer of $370,000 from the County General Fund to the 2004 Park Bond Capital Project Ordinance, does not restrict the use of the Property by the County.

We first note that the only limitation contained in the language of the referendum was on the expenditure of bond proceeds. There was no restriction as to the Property where the funds were to be expended, nor was there any restriction on how a particular piece of real estate in question was to be used. The Property was acquired by proceeds from the 1999 Land Bonds, not the 2004 Park Bonds. The 2004 Park Bond Authorization language restricted only the expenditure of bond proceeds on a stadium for professional baseball. *See* N.C. Gen. Stat. § 159-135 (2007) (the proceeds of the sale of a bond issue shall be applied only to the purposes for which the issue was authorized).

Plaintiff cites *Wishart v. Lumberton*, 254 N.C. 94, 118 S.E.2d 35 (1961) for the proposition that because County purchased the Property with the initial intent to use it as a public park, this Court must enjoin County from using it for anything else. This case is not apposite. In *Wishart*, the subject property had been dedicated for use as a public park by express authorization from the 1925 Legislature and had been used as a park for thirty years. *Wishart* dealt with the abandonment of property which had been permanently dedicated as a public park. *Id.* In the instant case, the General Assembly has not dedicated the Property for any specific use, nor has County ever used the Property for a public park. Further, N.C. Gen. Stat. § 160A-265,

made applicable to counties by N.C. Gen. Stat. § 153A-176, states that counties may: "(i) hold, use, change the use thereof to other uses, or (ii) sell or dispose of real and personal property, without regard to the method or purpose of its acquisition or to its intended or actual governmental or other prior use." N.C. Gen. Stat. § 160A-265 (2007); N.C. Gen. Stat. § 153A-176 (2007).

Our Supreme Court has discussed the limits which a bond authorization imposes on local government in *Sykes v. Belk*, 278 N.C. 106, 179 S.E.2d 439 (1971). In *Sykes*, the Charlotte City Council submitted a bond referendum to voters for the construction of a civic center on Brevard Street. After voter approval, the plan was changed to construct the civic center on Trade Street. The plaintiffs' principal contention was that the voters did not approve the issuance of bonds for a civic center at any place other than the Brevard Street site, and the bond issue was approved on the basis of misleading representations made in public speeches and through the news media that the civic center would be located on the Brevard Street site. Our Supreme Court noted that North Carolina permits the use of broad and general ballots in bond elections. *Id.* at 114, 179 S.E.2d at 444. In jurisdictions which permit the use of broad and general referendum ballots, "in determining whether there have been misrepresentations sufficient to void the bond election, the courts have consistently looked to the notice of election, the ballot, and the ordinance authorizing the issuance of bonds, i.e., matters which constitute official proceedings in connection with the bond issue." *Id.* The Supreme Court noted that neither "the ballot, ordinance, nor any official action mentioned the location of the civic center." *Id.* at 108, 179 S.E.2d at 440. The Supreme Court upheld the denial of plaintiffs' request for an injunction and held that that there was no substantial deviation from the purpose for which the bonds were proposed and that misrepresentations made as to the site did not give rise to an estoppel or vitiate the question submitted to voters.

In the instant case, the 2004 Park Bonds did not require County to construct a public park on the Property. The 2004 Park Bonds merely restricted the expenditure of bond proceeds for the capital costs of a professional baseball stadium. While County did spend $366,280.23 from the 2004 Park Bonds for master site plan design work for a park and temporary beautification on the Property, this money was subsequently reimbursed from County's general fund.

These transactions did not create an irrevocable dedication of the Property for use as a public park. None of the proceeds of the

2004 Park Bonds have been used for the Property or the professional baseball stadium project. The trial court found, "No proceeds of the 2004 Park Bonds are being applied to or invested in the Property." A public park is still going to be constructed, but it will be at another site. There is no substantial deviation from the purpose for which the bonds were proposed.

This argument is without merit.

E. County's Statutory Authority to Enter into a Lease of Property

[4] In his fourth argument, plaintiff contends that the Lease should be voided because N.C. Gen. Stat. §§ 160A-266(d) and -272 do not expressly allow the leasing of real property. We disagree.

The trial court concluded:

19. The County is authorized to enter into the Lease pursuant to authority vested in the County by N.C.G.S. § 160A-266(d).

20. The County has substantially complied with the requirements of N.C.G.S. § 160A-266(d) applicable to the County.

N.C. Gen. Stat. § 160A-266, applicable to Mecklenburg County by virtue of 2000 N.C. Sess. Laws 65, provides:

(d) When the board of commissioners determines that a sale or disposition of property will advance or further any county or municipality-adopted economic development, transportation, urban revitalization, community development, or land-use plan or policy, the county may, in addition to other authorized means sell, exchange or *transfer the fee or any lesser interest in real property*, either by public sale or by negotiated private sale.

2000 N.C. Sess. Laws 65 (Local Act) (emphasis added). This special legislation gives County the authority to lease its property. A leasehold is an interest in land. *Piedmont Triad Reg'l Water Auth. v. Lamb*, 150 N.C. App. 594, 596, 564 S.E.2d 71, 73 (2002) (citing N.C. Gen. Stat. § 40A-2(7)), *cert. denied and disc. review denied*, 356 N.C. 166, 568 S.E.2d 608 (2002).

Plaintiff contends that the Local Act applies only to sales of real property and excludes leases. This construction is not supported by the clear terms of the statute, which allows for the transfer of "any lesser interest in real property."

Further, N.C. Gen. Stat. § 160A-272, made applicable to counties through N.C. Gen. Stat. § 153A-176, provides "[l]eases for terms of

more than 10 years shall be treated as a sale of property and may be executed by following any of the procedures authorized for sale of real property." N.C. Gen. Stat. § 160A-272 (2007)[1]; N.C. Gen. Stat. § 153A-176 (2007). The Lease between County and the Knights is for longer than ten years and is thus by statute treated as a sale between the two parties.

This argument is without merit.

### F. Notice

**[5]** In his fifth argument, plaintiff contends that County failed to publish notice of the terms of the Lease actually entered into with the Knights. Plaintiff argues that N.C. Gen. Stat. § 160-266(d), made applicable by the Local Act, requires the publication of notice ten days prior to the adoption of the proposed resolution. We disagree.

The Local Act provides:

Notice of the proposed transaction shall be given at least 10 days prior to adoption of the resolution by publication in a newspaper of general circulation, generally describing:

(1) The property involved;

(2) The nature of the interest to be conveyed; and

(3) All of the material terms of the proposed  transaction, including any covenants, conditions, or restrictions which may be applicable.

2000 N.C. Sess. Laws 65.

County published notice of its intent to enter into the Lease on 21 December 2007. The Lease was signed and approved on 18 March 2008. Plaintiff argues that the transaction noticed in December was substantially different than the transaction entered into on 18 March because the final version of the Lease "added several new conditions for the Knights' ability to commence construction and also permitted the County Manager to waive conditions rather than by vote of the Board."

The 18 March Lease did not alter any of the material obligations between County and the Knights. The only difference between the 21 December 2007 lease and the 28 March 2008 lease is that the two conditions, which County could require before entering into the Lease,

---

1. N.C. Gen. Stat. § 160A-272 was amended by 2009 N.C. Sess. Laws 149; however, the quoted section was not altered. The amendment has no bearing on this case.

were waived and made a provision under the Lease requiring satisfaction before the Knights could begin construction on the baseball stadium. Neither of these two conditions altered the obligations of either County or the Knights. The Lease still requires that these conditions be satisfied before construction can begin.

This argument is without merit.

### III. Preliminary Injunction

**[6]** In his sixth argument, plaintiff contends that the trial court erred when it denied his motion for a preliminary injunction. We disagree.

A preliminary injunction "is an extraordinary measure taken by a court to preserve the *status quo* of the parties during litigation." *Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977). A plaintiff must show: 1) a likelihood of success on the merits, and 2) that plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the Court's opinion, issuance is necessary for the protection of plaintiff's rights during the course of litigation. *Id.* (citations omitted).

As we have discussed above, plaintiff did not show a likelihood of success on the merits of this case.

This argument is without merit.

### IV. Conclusion

The use of property acquired under N.C. Gen. Stat. § 159-48(c)(4b) for a professional baseball stadium is permitted as a county corporate purpose. County had authority to use land for the operation of a professional baseball stadium even though it involved the construction and operation of the stadium by a private party. There was no substantial deviation from the purpose for which the 2004 Park Bonds were approved. A leasehold is an interest in land, and 2000 N.C. Sess. Laws 65 gives County the authority to transfer any lesser interest in real property. Because the 18 March 2008 lease did not alter the obligations between County and the Knights, the notice published by County was legally sufficient. The trial court properly denied plaintiff's motion for a preliminary injunction because he did not show a likelihood of success on the merits of his case.

AFFIRMED.

Chief Judge MARTIN and Judge CALABRIA concur.