IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-756

Filed: 4 September 2018

Durham County, No. 12 CVS 3945

NNN DURHAM OFFICE PORTFOLIO 1, LLC; et al., Plaintiffs,

v.

HIGHWOODS REALTY LIMITED PARTNERSHIP; HIGHWOODS DLF 98/29, LLC; HIGHWOODS DLF, LLC; HIGHWOODS PROPERTIES, INC.; GRUBB & ELLIS |THOMAS LINDERMAN GRAHAM; and THOMAS LINDERMAN GRAHAM INC., Defendants.

Appeal by plaintiffs from orders entered 19 February 2013, 7 December 2016, and 3 January 2017 by Chief Business Court Judge James L. Gale in Durham County Superior Court. Heard in the Court of Appeals 6 March 2018.

*Stark Law Group, PLLC, by Thomas H. Stark and Seth A. Neyhart, and Penry Riemann, PLLC, by Andy Penry, for plaintiff-appellants.*

*Ellis & Winters LLP, by Jonathan D. Sasser, Jeremy M. Falcone, James M. Weiss, and Emily E. Erixson, for defendant-appellees Highwoods Realty Limited Partnership; Highwoods DLF 98/29, LLC; and Highwoods Properties, Inc.*

*Manning, Fulton & Skinner, P.A., by Michael T. Medford and J. Whitfield Gibson, for defendant-appellees Thomas Linderman Graham, Inc. and Grubb & Ellis|Thomas Linderman Graham.*

*North Carolina Department of Secretary of State, by Enforcement Attorney Colin M. Miller, for amici curiae, the North Carolina Secretary of State and the North American Securities Administration Association, Inc.*

TYSON, Judge.

Plaintiffs appeal from orders granting (1) Defendants' motions to dismiss, except for denial of Defendants' motion to dismiss Plaintiffs' claim of secondary liability under the North Carolina Securities Act; (2) Defendants' motions for judgment on the pleadings; and, (3) Defendants' motions for summary judgment.

I. Background

*A. Factual Background*

Plaintiffs, NNN Durham Office Portfolio 1, LLC, et al., are purchasers of tenant-in-common ("TIC") interests in five parcels of real property located in Durham, North Carolina (the "Property"). Plaintiff LLCs are all Delaware limited liability companies, which are registered with the North Carolina Secretary of State. Plaintiffs include the individual purchasers and LLCs formed by the individuals for the purpose of purchasing their TIC real property interests and through which these interests were purchased. Only three Plaintiff TIC owners are North Carolina residents (the "North Carolina Plaintiffs").

The Property consists of tracts of real property improved with five medical office and clinic buildings owned at relevant times by Defendant Highwoods DLF 98/29, LLC, a Delaware-chartered corporation with its principal place of business in Raleigh, North Carolina, and the successor-in-interest to the seller of the Property, Highwoods DLF 98/29, L.P. Defendant Highwoods DCF, LLC, a Delaware LLC, was the sole general partner of Highwoods DLF 98/29, L.P. (collectively, "Highwoods").

In 2006, the Property's two primary tenants were Duke Pediatrics and Duke's Patient Revenue Management Organization ("Duke PRMO"), both of which are affiliated with Duke University Health System, Inc. (collectively, "Duke"). Duke PRMO occupied over 54% of rentable space in the Property, including a sublease with Qualex, Inc. Duke PRMO's sublease term was due to expire in February 2009, and its term of leases in the other two buildings were scheduled to expire in June 2010.

In the spring of 2006, Highwoods approached Defendant Thomas Linderman Graham Inc. ("TLG"), a North Carolina-based commercial real estate company, which conducted business under the trade name Grubb & Ellis | Thomas Linderman Graham, about selling the Property. Highwoods and TLG entered into an exclusive listing agreement on 24 October 2006 for TLG to analyze, market, and broker a sale of the Property. TLG prepared a Confidential Offering Memorandum ("COM"), dated 6 December 2006, for prospective buyers of the Property. The COM disclosed that the terms of the leases for the Property's tenants were set to expire in 2009 and 2010 and contained no renewal options. The COM also contained a series of "renewal probabilities" for each of the current tenants, including Duke PRMO. The COM's terms provided that the information contained therein was "being provided solely to facilitate the Prospective Purchaser's own due diligence for which it shall be fully and solely responsible."

In April 2006, TLG representative Jim McMillan settled on a "fairly conservative" projected valuation for the Property of between $30.2 to $31.3 million, recognizing that "[a]ll in all, a big part of th[e] sale will be the environment the properties sit in and the likelihood an[ ] investor believes Duke is there for the long run."

In September 2006, Duke PRMO began considering a possible relocation from the Property and retained Corporate Realty Advisors to help solicit bids to build a new Duke PRMO facility. On or about 12 September 2006, Highwoods' parent company, Highwoods Properties, Inc., made an informal proposal for a build-to-suit building for Duke PRMO to be ready by July 2008. Discussions occurred between Highwoods and Duke PRMO's broker about possible relocation out of the Property. In October 2006, Duke PRMO issued a request for proposals ("RFP") for a build-to-suit replacement building.

On 6 December 2006, Highwoods Properties, Inc. formally submitted to Duke a proposal to build a new facility for Duke PRMO. The COM did not disclose any information about Duke PRMO's RFPs for a build-to-suit building or Highwoods Properties' proposal.

On 21 December 2006, Triple Net Properties, LLC ("Triple Net") submitted the winning bid of $34.2 million to TLG for the purchase of the Property. Triple Net's final bid indicated its intention to purchase the Property with money raised through

a TIC like-kind investment structure pursuant to Section 1031 of the Internal Revenue Code. *See* 26 U.S.C. § 1031 (2018).

The day before submitting its final bid, Triple Net emailed McMillan, and asked why Duke had not yet renegotiated its leases and for assurance of Duke's continued leasing of the Property. McMillan responded that day, stating there was no known reason why Duke had not been negotiating new leases. McMillan also stated that the "location works very well for [Duke] and they are well entrenched there," Duke had been expanding into its current buildings, and no other location in the area could accommodate Duke's needs.

The next day, on 22 December 2006, McMillan informed Triple Net that Highwoods had chosen Triple Net as the purchaser.

On 5 January 2007, Triple Net prepared a private-placement memorandum ("PPM") and other offering materials for prospective investors in order to sell TIC interests to Section 1031 like-kind exchange buyers. The PPM disclosed the objectives, risks, and terms associated with investing in the Property and included various proposed controlling agreements, including a TIC Agreement and Management Agreement (collectively, "the Agreements").

The PPM stated that to participate in the investment, each investor was required to complete a TIC purchaser questionnaire, which cautioned them to carefully read the PPM. The PPM contained eighteen pages of risk factors,

specifically including disclosures and warnings that the Property carried a large dependence on one tenant, Duke, and the expiration dates and terms of Duke's leases.

Under the risk factor "Large Dependence on One Tenant," the PPM explained that "[a]ny large-scale departure by Duke [from the Property] would significantly affect the cash flow and fair market value of the Property" and without Duke, the income would not cover the loan payments, the lender could foreclose, and investors could suffer a complete loss of their investment. The Risk Factors also included a statement that "[**u**]**nless extended, leases with all of the tenants, representing 100% of the Property, will expire within the next 3 calendar years**." (Emphasis original).

Between 9 January 2007, when Highwoods provided the due diligence materials, and 24 January 2007, when the final purchase agreement was executed, Triple Net continued its due diligence efforts. During that time, Triple Net secured a due diligence report and an independent property appraisal and interviewed the Property's tenants, including Duke's representative Scott Selig.

On 19 January 2007, a meeting was held between Mike Waddell of Triple Net, Selig of Duke, and Charles Ostendorf and David Linder, both of Highwoods. After the meeting, Ostendorf took Waddell on a tour of the Property. Afterwards, Ostendorf stated he did not envision Duke would move if they were provided a "very economical long term deal."

On 24 January 2007, Triple Net and Highwoods executed the Purchase Sale Agreement for the Property. By 12 March 2007, Triple Net had recruited a group of TIC like-kind exchange investors to invest in the Property. The sale closed on 12 March 2007, and a deed was recorded in Durham County Registry conveying title of the Property from Defendant Highwoods DLF 98/29, L.P. to Plaintiffs and other entities as tenants-in-common.

In November 2007, Duke announced its decision not to renew Duke PRMO's leases beyond their expiration date in June 2010. Duke PRMO vacated the Property on 12 December 2008. Duke Pediatrics renewed its lease for another seven years and remains a tenant at the Property.

In April 2011, the lender initiated foreclosure proceedings on the Property. In October 2011, the Property was sold by upset bid at a public foreclosure sale, and on 20 December 2011, it was conveyed to the highest bidder.

### B. Procedural Background

Plaintiffs initially filed a complaint against Defendants Highwoods and TLG on 1 April 2010, but voluntarily dismissed that action without prejudice on 6 July 2011 after the case had been designated a mandatory complex business case by the Chief Justice of North Carolina. On 6 July 2012, Plaintiffs filed their present complaint. On 19 February 2013, the Business Court granted Defendants' motions to dismiss Plaintiffs' claims of fraud, fraud in the inducement, unfair and deceptive

trade practices, negligent misrepresentation, and punitive damages, but denied Defendants' motions to dismiss Plaintiffs' claims of secondary liability under N.C. Gen. Stat. § 78A-56(c)(2) of the North Carolina Securities Act and conspiracy to violate that Act ("February 2013 order").

On 15 November 2013, Highwoods moved for partial summary judgment on the question of whether the TICs' investments in the Property qualified as a sale of securities under the Securities Act. The Business Court deferred ruling on that motion until discovery had concluded.

On 29 May 2015, Defendants filed Rule 12(c) motions for judgment on the pleadings concerning the claims of the fifty-five out-of-state Plaintiffs on the grounds that those Plaintiffs had not alleged they had received or accepted an offer to sell a security in North Carolina, and cannot recover under the North Carolina Securities Act.

The parties filed cross-motions for summary judgment on 17 August 2015. Defendants filed motions for summary judgment on all remaining claims pending against them. Plaintiffs moved for partial summary judgment on their claim of secondary liability under the Securities Act. Also on 17 August 2015, Plaintiffs filed a North Carolina Rules of Civil Procedure, Rule 54(b) motion seeking the Business Court to modify its February 2013 order to reinstate Plaintiffs' punitive damages claim.

C. The Business Court's Orders

The Business Court held a joint hearing on the summary judgment motions and on Plaintiffs' Rule 54(b) motion on 23 November 2015. On 5 December 2016, the Business Court entered an Order and Opinion ("5 December 2016 order"). On 21 December 2016, Plaintiffs filed a motion pursuant to Rule 54 to certify the Business Court's order as a final judgment in this case. On 29 December 2016, the Business Court issued its Revised Order & Opinion and Final Judgment ("29 December 2016 revised order"). The 29 December 2016 revised order varies from the 5 December 2016 order only insofar as it certifies the revised order as a final judgment pursuant to Rule 54(b).

In pertinent part, the 29 December 2016 revised order granted Defendants' Rule 12(c) motions, denied Plaintiffs' motion for partial summary judgment against Defendants for primary liability under N.C. Gen. Stat. § 78A-56(a), and granted summary judgment to Defendants on Plaintiffs' secondary liability claims under N.C. Gen. Stat. § 78A-56(c);.

On 30 December 2016, Plaintiffs filed timely notice of appeal from the February 2013 order, the 5 December 2016 order, and the 29 December 2016 revised order.

II. Jurisdiction

Appeal lies of right in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) (2013) and 1-277 (2017). This case was designated a complex business case on 11 July 2012, prior to the effective date of the 2014 amendments designating a right of appeal from a final judgment of the Business Court directly to the Supreme Court of North Carolina. *See* 2014 N.C. Sess. Laws 621, ch. 102, § 1.

### III. Issues

Plaintiffs argue the Business Court erred by (1) granting Defendants' motion for judgment on the pleadings against out-of-state Plaintiffs under N.C. Gen. Stat. § 78A-63(a); (2) dismissing Plaintiffs' claims against Defendants for primary liability under N.C. Gen. Stat. § 78A-56(a); (3) granting summary judgment to Defendants on Plaintiffs' secondary liability claims under N.C. Gen. Stat. § 78A-56(c); and (4) dismissing Plaintiffs' common law claims.

In their brief, Plaintiffs also argue the Business Court erred in dismissing their other North Carolina Securities Act claims pursuant to sections 78A-12(a)(5) and 78A-56(b1). However, Plaintiffs acknowledge that the Business Court "did not address Defendants' civil liability under N.C. Gen. Stat. § 78A-12." The Business Court stated it was dismissing all Plaintiffs' claims under the Securities Act, other than Plaintiffs' claims under N.C. Gen. Stat. § 78A-56(c)(2). Plaintiffs assert they raised the issue on summary judgment and requested the Business Court reconsider

it pursuant to Rule 54(b). Plaintiffs' Rule 54(b) motion was denied as moot. As a result, this question is not properly before this Court, and we need not address it.

## IV. Standards of Review

Plaintiffs appeal from the Business Court's partial grant of summary judgment in favor of Defendants, grant of certain of Defendants' 12(b)(6) motions to dismiss, and grant of Defendant's motions for judgment on the pleadings.

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)).

> A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense.

*Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 708, 582 S.E.2d 343, 345 (2003) (citation and internal quotation marks omitted), *aff'd per curiam*, 358 N.C. 137, 591 S.E.2d 520 (2004).

"Judgment on the pleadings, pursuant to Rule 12(c), is appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain." *Builders Mut. Ins. Co. v. Glascarr Props., Inc.*, 202 N.C. App. 323, 324,

688 S.E.2d 508, 510 (2010) (quoting *Groves v. Cmty. Hous. Corp.*, 144 N.C. App. 79, 87, 548 S.E.2d 535, 540 (2001)). "In deciding such a motion, the trial court looks solely to the pleadings. The trial court can only consider facts properly pleaded and documents referred to or attached to the pleadings." *Id.* at 324-25, 688 S.E.2d at 510 (quoting *Reese v. Mecklenburg Cty.*, 200 N.C. App. 491, 497, 685 S.E.2d 34, 37-38 (2009)). "This Court reviews *de novo* a trial court's ruling on motions for judgment on the pleadings." *Id.* at 325, 688 S.E.2d at 510 (quoting *Reese*, 200 N.C. App. at 497, 685 S.E.2d at 38).

"The motion to dismiss under N.C. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. In ruling on the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief must be granted." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citations omitted).

## V. Analysis

### *A. Plaintiffs' Claims Under N.C.G.S. §78A-56(a)*

Plaintiffs argue the Business Court erred by dismissing Plaintiffs' primary liability claims under N.C. Gen. Stat. § 78A-56(a) against Defendants. We disagree.

The Business Court found primary liability is imposed upon a person or entity who sells or offers for sale a security. Plaintiffs did not allege Defendants solicited Plaintiffs in order to offer or sell them securities. Further, any privity between

Defendants and Plaintiffs resulting from the transfer of real property interests by deed does not create any liability for Defendants as purported sellers of securities. As the Business Court concluded, "The critical fact is not Highwoods' transferring the fractional real estate interests to Plaintiffs, but instead is Plaintiffs' entrusting those fractional interests to Triple Net in exchange for investment returns."

We agree with the Business Court's reasoning and conclusion that Plaintiffs have not stated a claim of primary liability under the North Carolina Securities Act against Defendants. Without more, i.e., soliciting Plaintiffs or promoting the sale of TIC interests, Defendants cannot automatically or statutorily be deemed to be sellers of securities simply as a result of Highwoods' deeding the real property to them. Triple Net requested and assigned its contract with Highwoods for it to deed the property directly to Plaintiffs. Plaintiffs cannot establish liability, even if all parties, including Defendants, knew or should have known that Triple Net as buyer was a syndicator and that the fractional interests Highwoods deeded to Plaintiffs would be entrusted to Triple Net in exchange for investment returns. *Cf. S.E.C. v. Apuzzo*, 689 F.3d 204, 214 (2d Cir. 2012) (concluding the complaint plausibly alleged that the defendant provided substantial assistance to the primary violator under the federal securities law by agreeing to participate in the transactions at issue, negotiating the details of the transactions, and, *inter alia*, approving or knowing about the issuance of inflated invoices).

Highwoods' sole interaction with Plaintiffs was to deed the TIC interests in the real property to them at Triple Net's request and assignment. "The principle function of a deed is to evidence the transfer of a particular interest in land . . . ." *Strange v. Sink*, 27 N.C. App. 113, 115-16, 218 S.E.2d 196, 198 (1975). When a deed fulfills all the provisions of the contract, the executed contract then merges into the deed. *Biggers v. Evangelist*, 71 N.C. App. 35, 38, 321 S.E.2d 524, 526 (1984) (citations omitted). This deed transfer by Highwoods and recordation was a sale of real property and did not constitute the sale of a security.

Triple Net created, offered, and sold the TIC interests to Plaintiffs. Triple Net drafted the PPM, which contained the alleged misrepresentations and omissions upon which Plaintiffs based their securities law claims, without the participation of Defendants. The Business Court correctly granted Defendants Highwoods and TLG's motion to dismiss Plaintiffs' primary liability claims under the North Carolina Securities Act. Plaintiff's arguments are overruled.

### B. Summary Judgment to Defendants on Secondary Liability Claims

Plaintiffs contend the Business Court erred by granting summary judgment to Defendants on Plaintiffs' secondary liability claims under N.C. Gen. Stat. § 78A-56(c). Plaintiffs argue the Business Court's narrow construction of the term "material aid" under section 78A-56(c)(2) is an error of law, and that at the very least, Plaintiffs' evidence tends to show material issues of fact exist. We disagree.

The Securities Act imposes two essential elements for secondary liability: (1) the "material aid" requirement, and (2) the "actual knowledge" requirement. N.C. Gen. Stat. § 78A-56(c)(2) (2017). In construing the material aid requirement, the Business Court in its 19 February 2013 order concluded:

> {78} There is no case law in North Carolina construing the concept of aiding and abetting a securities violation. In fact, there is limited North Carolina law examining aider and abettor liability in any civil context. North Carolina has at least in some instances adopted the Restatement (Second) of Torts § 876, which incorporates the "substantial assistance" standard. *See Tong v. Dunn*, 2012 NCBC LEXIS 16, at *26 n.3 (N.C. Super. Ct., Mar. 19, 2012); RESTATEMENT (SECOND) OF TORTS § 876 (1979). However, the North Carolina Court of Appeals has indicated that § 876 should be applied restrictively, and that aiding and abetting is considered in the nature of inciting conduct or taking concerted action. *Hinson v. Jarvis*, 190 N.C. App. 607, 611-13, 660 S.E.2d 604, 608 (2008). This court has stated that if a claim for aiding and abetting a breach of fiduciary duty exists at all, it will require proof that the "aiding and abetting party [] have the same level of culpability or scienter" as the primary tort-feasor. *Tong*, 2012 NCBC LEXIS 16, at *26 (citing *Sompo Japan Ins. Inc. v. Deloitte & Touche, LLP*, 2005 NCBC LEXIS 1, at *12 (N.C. Super Ct., June 10, 2005)).

Since that order was entered, only one case has dealt with the issue of aiding and abetting a securities violation, *Piazza v. Kirkbride*, 246 N.C. App. 576, 785 S.E.2d 695, *disc. review allowed*, 369 N.C. 37, 794 S.E.2d 316 (2016), and the Court only elaborated on the burden a plaintiff bears in proving secondary liability:

> The first subsection, N.C. Gen. Stat. § 78A-56(a), imposes primary liability on "any person" who offers or sells a

security. If primary liability exists, then secondary liability may be imposed upon "control persons," enumerated in N.C. Gen. Stat. § 78A-56(c)(1), or upon persons not included in section 78A-56(c)(1) who "materially aid[ ]" in the transaction basing primary liability. N.C. Gen. Stat. § 78A-56(c)(2). The secondarily liable parties are "jointly and severally" liable "to the same extent" as the primarily liable person. N.C. Gen. Stat. § 78A-56(c)(1)-(2). *This differentiation matters because a plaintiff bears a higher burden of proof in proving secondary liability for a person outside of section 78A-56(c)(1) who "materially aids" in the transaction.*

246 N.C. App. at 597-98, 785 S.E.2d at 709 (emphasis supplied).

In its 29 December 2016 revised judgment and order, the Business Court relied upon its earlier order in analyzing the "material aid" requirement and concluded that Highwoods' mere transfer of a real property interest by deed alone did not constitute "material aid" within the scope of the Securities Act. The Business Court also concluded that "the evidence of record, viewed in the light most favorable to Plaintiffs, does not allow for a conclusion that either Highwoods or TLG knew of and then materially aided or substantially assisted in Triple Net's expression of the opinion upon which the North Carolina Plaintiffs base their primary-liability claim."

Under federal securities law, the United States Court of Appeals for the Fourth Circuit has noted that "[a]bsent a [defendant's] duty to disclose, allegations that a defendant knew of the wrongdoing and did not act fail to state an aiding and abetting claim." *Schatz v. Rosenberg*, 943 F.2d 485, 496 (4th Cir. 1991) (citations omitted). In other words, pursuant to the provision of the federal securities law comparable to

N.C. Gen. Stat. § 78A-56(c)(2), absent a duty that Highwoods and TLG owed to Plaintiffs, any allegations that Highwoods and TLG purportedly knew of any wrongdoing perpetrated by Triple Net, but failed to act to inform Plaintiffs of that wrongdoing, would nevertheless fail to state a claim for secondary liability. *See id.* (holding that the plaintiffs had not pled an aider and abettor claim because they did not adequately allege that defendant "substantially assisted" the primary violator even where the defendant failed to disclose or correct misrepresentations, participated in negotiations and drafting documents, and conducted the closing at its offices); *see also Venturtech II v. Deloitte Haskins & Sells*, 790 F. Supp. 576, 589 (E.D.N.C. 1992) (dismissing aiding and abetting claims against [accountants] because the plaintiffs "ha[d] not presented any evidence indicating that [the accountants] conducted [their] audits with a 'high conscious intent' to aid a securities violation").

Nothing in the record indicates, and no party argues, that Defendants owed any duty to disclose anything directly to Plaintiffs. Additionally, "the PPM expressly advise[d] any potential purchaser that statements in the PPM must be assumed to have been based solely on Triple Net's own due diligence." Furthermore, as the Business Court correctly stated, "there is no proof that [Highwoods and TLG] '*actually knew* of the existence of the facts by reason of which the [primary] liability is alleged to exist,'" namely, the alleged misrepresentations Triple Net purportedly made in the PPM. (Emphasis supplied).

Based upon all of the record evidence, including the Business Court's analysis of the applicable law, we agree with the Business Court's conclusion that "Plaintiffs have failed to offer proof that either Highwoods or TLG provided material aid with the requisite actual knowledge under the Securities Act." Therefore, the Business Court did not err in granting Defendants' motions for summary judgment and dismissing Highwoods and TLG from the instant case with prejudice. Plaintiffs' argument is overruled.

*C. Judgment on the Pleadings Against Out-of-State Plaintiffs*

Plaintiffs argue the Business Court erred by granting Defendants' Rule 12(c) motion for judgment on the pleadings against the fifty-five out-of-state Plaintiffs under N.C. Gen. Stat. § 78A-63(a). They assert this Court should hold that all Plaintiffs, including the out-of-state Plaintiffs, are eligible to proceed on their claims under a proper interpretation of N.C. Gen. Stat. § 78A-56.

Plaintiffs also argue that because the offering at issue in this case was made nationwide, including solicitations to North Carolina citizens who received communications within North Carolina, the requirements of N.C. Gen. Stat. § 78A-63(a) were met for the entire offering and apply to all Plaintiffs. As a result, Plaintiffs argue, civil liability arises for Defendants under sections 78A-56(a) and 78A-56(c) to "any person" who purchased securities, whether or not they received their offer in North Carolina. Because we otherwise affirm the Business Court's orders, which

effectively disposed of the lawsuit by granting judgment in favor of Defendants, this argument is moot.

### D. Plaintiffs' Common Law Claims

Lastly, Plaintiffs argue the Business Court erred by dismissing their common law claims for fraud, fraud in the inducement, and negligent misrepresentation because Plaintiffs assert they adequately pled justifiable reliance against Defendants. Plaintiffs also argue the Business Court erred by holding that no fraud claims based on indirect reliance are recognizable under North Carolina law.

Regarding Plaintiffs' common law claims, the Business Court concluded "that Plaintiffs have not stated a claim for common law fraud, fraud in the inducement, or negligent misrepresentation because they have not adequately alleged justifiable reliance, which is an element for each of these claims." The Business Court found and concluded Plaintiffs could not transfer any reliance Triple Net had on Defendants Highwoods and TLG's COM to Plaintiffs' reliance on Triple Net's PPM.

Further, "[t]he COM also specifically states that it is being provided only to potential purchasers of 'the interest described herein,' which is purchase of the Subject Property." Finally the Business Court concluded,

> [t]o the extent that Plaintiffs want to incorporate Triple Net's reliance on Defendants, they must be constrained by the general rule of no duty to speak and by the established rule that when "the purchaser has full opportunity to make pertinent inquiries but fails to do so through no artifice or inducement of the seller, an action in fraud will not lie."

> *C.F.R. Foods, Inc. [v. Randolph Development Co.]*, 107 N.C.
> App. [584,] 589, 421 S.E.2d [386,] 389 (quoting *Libby Hill
> Seafood Rests., Inc. v. Owens*, 62 N.C. App. 695, 698, 303
> S.E.2d 565, 568 (1983)). (Footnotes omitted).

We agree with the Business Court's review and reasoning, particularly its conclusion that "Plaintiffs cannot transfer Triple Net's reliance on the COM to their reliance on the PPM. *See Raritan River Steel Co. v. Cherry, Bekaert & Holland, Gen. P'ship*, 322 N.C. 200, 205–07[, 367 S.E.2d 609, 612] (1988)."

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan*, 322 N.C. at 206, 367 S.E.2d at 612 (citations omitted). In *Raritan*, the Supreme Court of North Carolina rejected the concept of indirect reliance or "reliance by proxy" for purposes of common law misrepresentation claims. *Id.* In that case, the plaintiffs allegedly relied upon financial information in a report that was based on faulty financial statements, prepared by an accountant, but the plaintiffs did not rely on the faulty financial statements *themselves*. *Id.* at 205, 367 S.E.2d at 612. The Supreme Court concluded "that a party cannot show justifiable reliance on information contained in audited financial statements without showing that he relied upon the actual financial statements themselves to obtain this information." *Id.* at 206, 367 S.E.2d at 612.

Plaintiffs have alleged Defendants' actively concealed and misrepresented facts to Triple Net, and Defendants knew Triple Net was repeating their

misrepresentations to TIC purchasers. Plaintiffs assert they have stated a valid claim for fraud, which distinguishes negligent statements from those known to be false. We disagree.

The COM, issued by Defendants Highwoods and TLG, when compared with the PPM issued by Triple Net, contained different renewal probabilities for the cash flow projections and assumptions, which undermine Plaintiffs' fraud claim. Defendants Highwoods and TLG's COM included a 75% default renewal rate in its assumptions for four of the five buildings, and a 90% renewal rate in its assumption for the fifth building. By contrast, Triple Net's PPM projected lower probable rates of renewal, a 50% renewal for one building and a 75% renewal for the others. In other words, the very statements in Highwoods and TLG's COM that Plaintiffs claim were misrepresentations upon which they indirectly relied were not copied and republished by Triple Net in the PPM. Triple Net also retained an independent appraiser to provide an appraisal and opinion of the value of the Property.

Furthermore, no Plaintiff ever alleges they saw the Defendants Highwoods and TLG's COM itself. No Plaintiff directly relied upon the information in the COM to make their investment. Even presuming misrepresentations, or outright falsehoods, existed in the COM produced by Defendants Highwoods and TLG, Plaintiffs could not have relied on the COM, a document they had never seen, and which was not

republished, copied verbatim, or incorporated into the PPM, which reached different conclusions. *See id.* at 205-06, 367 S.E.2d at 612.

The Business Court did not err in granting Defendants' motions to dismiss Plaintiffs' common law claims for fraud, fraud in the inducement, and negligent misrepresentation. Plaintiffs' arguments are overruled.

## VI. Conclusion

We affirm the Business Court's orders dismissing Plaintiffs' claims against Defendants Highwoods and TLG for primary liability under N.C. Gen. Stat. § 78A-56(a), granting summary judgment to Defendants Highwoods and TLG on Plaintiffs' secondary liability claims under N.C. Gen. Stat. § 78A-56(c), and dismissing Plaintiffs' common law claims. Because of our holding, which dismisses all statutory and common law claims against Defendants Highwoods and TLG, Plaintiffs' appeal of Defendants' motion for judgment on the pleadings against out-of-state Plaintiffs under N.C. Gen. Stat. § 78A-63(a) is moot. *It is so ordered.*

AFFIRMED.

Judges BRYANT and DILLON concur.