IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-262

Filed 19 March 2024

Alamance County, No. 21-CVS-710

NORTH CAROLINA STATE CONFERENCE OF THE NATIONAL ASSOCIATION
FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP); NAACP
ALAMANCE COUNTY BRANCH #5368; DOWN HOME NC; ENGAGE
ALAMANCE; DREAMA CALDWELL; TAMARA KERSEY; REVEREND DOCTOR
DANIEL KUHN; REVEREND RANDY ORWIG; and MARYANNE SHANAHAN,
Plaintiffs,

v.

ALAMANCE COUNTY; ALAMANCE COUNTY BOARD OF COMMISSIONERS;
and COMMISSIONERS STEVE CARTER, WILLIAM LASHLEY, PAMELA T.
THOMPSON, JOHN PAISLEY, and CRAIG TURNER, JR., in their official
capacities, Defendants.

Appeal by plaintiffs from order entered 5 October 2022 by Judge Forrest

Donald Bridges in Alamance County Superior Court. Heard in the Court of Appeals

14 November 2023.

*Wilmer Cutler Pickering Hale & Dorr LLP, by Ronald C. Machen, Jr., Karin
Dryhurst, Mark C. Fleming, and Marissa M. Wenzel; The Paynter Law Firm,
PLLC, by Stuart M. Paynter, Gagan Gupta, and Sara Willingham; and Tin,
Fulton, Walker & Owen, PLLC, by Abraham Rubert-Schewel, for Plaintiffs-
Appellants.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Natalia K. Isenberg; and
Womble, Bond, Dickinson (US) LLP, by Christopher J. Geis, for Defendants-
Appellees.*

DILLON, Chief Judge.

This appeal arises from a dispute concerning the presence of a Confederate

monument outside a county courthouse.

## I.    Background

The monument at issue is located in front of the Alamance County courthouse in Graham and depicts an archetypal Alamance County infantry soldier serving the Confederacy during the Civil War (the "Monument").

In the summer of 2020, there was an increase in protests nationwide against the presence of Confederate monuments in public squares. On 30 March 2021, the North Carolina State Conference of the NAACP, the Alamance County branch of the NAACP, Down Home NC, Engage Alamance, and several individuals (collectively, "Plaintiffs") commenced this suit against Alamance County, the Alamance County Board of Commissioners, and multiple commissioners in their official capacities (collectively, "Defendants"). Plaintiffs assert Defendants' maintenance and protection of the Monument is unconstitutional. Consequently, they demand the Monument be moved from its current location in front of the courthouse to a "historically appropriate location."

The parties filed cross-motions for summary judgment. After a hearing on the matter, the trial court entered an order granting Defendants' motion for summary judgment. Plaintiffs appeal.

## II.    Analysis

On appeal, Plaintiffs argue that Defendants acted and are acting unconstitutionally by maintaining and protecting the Monument in its current

location in front of the courthouse and refusing to remove the Monument to another location. For the reasoning below, we conclude that Defendants lack authority from our General Assembly to remove the Monument based on N.C. Gen. Stat. § 100-2.1 (the "Monument Protection Law" or the "Law") and that the Monument Protection Law as applied in this dispute is constitutional. We, therefore, affirm the order of the trial court granting Defendants summary judgment.

A. Defendants Lack Authority Under the Monument Protection Law

Our Court reviews questions of statutory interpretation *de novo*. *In re Ernst & Young, LLP*, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009). Additionally,

> [w]hen a court engages in statutory interpretation, the principal goal is to accomplish the legislative intent. The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, "the spirit of the act and what the act seeks to accomplish." If the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms so long as it is reasonable to do so.

*McAuley v. N.C. A&T State Univ.*, 383 N.C. 343, 347, 881 S.E.2d 141, 144 (2022) (cleaned up).

Subsection (b) of the Monument Protection Law provides that "[a]n object of remembrance located on public property may not be permanently removed and may only be relocated, whether temporarily or permanently, under the circumstances listed in this subsection and subject to the limitations in this subsection." N.C. Gen. Stat. § 100-2.1(b) (2023). An "object of remembrance" is defined as "a monument . . .

that commemorates an event, a person, or military service that is part of North Carolina's history." *Id.*

The record conclusively shows that the Monument is a monument located on public property which commemorates military service that is part of North Carolina's history. In so concluding, we note our federal government recognizes that service in the Confederate Army qualifies as "military service." *See* 38 U.S.C. § 1501 ("The term 'Civil War veteran' includes a person who served in the military or naval forces of the Confederate States of America during the Civil War"); *Id.* § 1532 (allowing surviving spouses of Confederate soldiers to qualify as surviving spouses of Civil War veterans for receiving pensions). We further note that North Carolina recognizes "Confederate Memorial Day" as a legal public holiday. N.C. Gen. Stat. § 103-4(a)(5) (2023). Thus, we conclude as a matter of law that the Monument was of the type intended to be covered by the General Assembly when it enacted the Monument Protection Law.

And for the reasoning below, we conclude that, under the Monument Protection Law, Defendants lack authority to remove the Monument.

None of the statutory exceptions to the Monument Protection Law, set forth in subsection (c) of the Law, apply in the present case. Indeed, the Monument Protection Law provides four exceptions to the Law's application. *Id.* § 100-2.1(c)(1)–(4). The only exception potentially applicable here is the building inspector exception, which exempts an object of remembrance from the limitations of the statute if "a building inspector or similar official has determined [the object of remembrance] poses a threat

to public safety because of an unsafe or dangerous condition." *Id.* § 100-2.1(c)(3). The building inspector exception only gives discretion to a "building inspector or similar official" to determine whether a monument poses a safety threat. Building inspectors' duties include the enforcement of laws regarding the following: building construction; installation of plumbing, electric, heating, refrigeration, and air-conditioning systems; and "maintenance of buildings and other structures in a safe, sanitary, and healthful condition." N.C. Gen. Stat. § 160D-1104(a)(1)–(3) (2023). On its face, the building inspector exception is intended to allow for removal only when there are *structural concerns* about a monument that could endanger the public, such as when a monument is at risk of toppling over due to faulty design.

Here, Plaintiffs argue that Alamance County's county manager should have qualified as a "similar official" under the building inspector exception. On 20 June 2020, during the wave of protests in summer 2020, the county manager emailed the commissioners, asking them to consider removing the Monument. He was concerned about the safety of people protesting at the Monument, both protesters attending in favor of and in opposition to the Monument.[1]

In contrast to a building inspector's role, a county manager's role is a managerial role. *See* N.C. Gen. Stat. § 153A-82 (2023). Specifically, the county manager is "the chief administrator of county government" whose duties include,

---

[1] The county manager did not consult with the county attorney before sending this email and was unaware that the Law would prohibit removal of the Monument.

among others, the following: supervision of county offices, departments, boards, commissions, and agencies; attendance at meetings of the board of commissioners; ensurance that the board of commissioners' orders, ordinances, resolutions, and regulations are faithfully executed; and preparation of the annual budget. *Id.*

Because the county manager is not a "similar official" to a building inspector, we conclude the building inspector exception does not apply to the county manager in this case. Accordingly, the trial court correctly determined that no exceptions applied to allow for removal of the Monument.

Having determined that the Monument Protection Law applies to the Monument, we consider whether the Law authorizes Defendants to remove the Monument. Subsection (b) of the Law provides two circumstances under which an object of remembrance may be relocated, namely (1) "[w]hen appropriate measures are required by the State or a political subdivision of the State to preserve the object" or (2) "[w]hen necessary for construction, renovation, or configuration of buildings, open spaces, parking, or transportation projects." N.C. Gen. Stat. § 100-2.1(b)(1)–(2). However, there is nothing in the record showing that either circumstance applies to the Monument. Accordingly, we conclude the General Assembly has not clothed Defendants with authority to remove the Monument under the facts of this case.

### B.     North Carolina Constitution

Plaintiffs contend the trial court erred "by holding that a statute could excuse violations of the North Carolina Constitution" because Defendants violate multiple

provisions of the North Carolina Constitution by "maintaining and protecting a symbol of white supremacy in front of an active courthouse at the center of town."

Plaintiffs bring an as-applied—rather than a facial—constitutional challenge of the statute. "[A]n as-applied challenge represents a plaintiff's protest against how a statute was applied in the particular context in which plaintiff acted or proposed to act, while a facial challenge represents a plaintiff's contention that a statute is incapable of constitutional application in any context." *Town of Beech Mountain v. Genesis Wildlife Sanctuary, Inc.*, 247 N.C. App. 444, 460, 786 S.E.2d 335, 347 (2016) (citation omitted).

Plaintiffs argue there are material disputes of fact regarding these constitutional claims that could not be decided at summary judgment and warranted a trial. We disagree with Plaintiffs and conclude that Plaintiffs' constitutional claims were appropriately decided as matters of law at the summary judgment stage.

As a preliminary matter, Plaintiffs correctly note that a statute cannot excuse constitutional violations because our state constitution governs as "the supreme law of the land." *State v. Emery*, 224 N.C. 581, 583, 31 S.E.2d 858, 860 (1944). However, as discussed below, there are no constitutional violations here that the statute would be excusing.

### 1. Equal Protection Clause

First, Plaintiffs argue there was discriminatory intent behind Defendants' decision not to move the Monument, in violation of the Equal Protection Clause.

Our state constitution's Equal Protection Clause states that "[n]o person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin." N.C. Const. art. I, § 19. "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

In their brief, Plaintiffs invoke the *Arlington Heights* analysis for determining whether discriminatory intent was a motivating factor in Defendants' decision. *See id.* at 265–68. However, Defendants' intent in not relocating the Monument is irrelevant in this case. Even if some of the Defendants had a discriminatory intent, as alleged by Plaintiffs, that intent was not the reason that the Monument has remained in front of the courthouse—the Monument has remained in place *because the Monument Protection Law forbids Defendants from moving the Monument*.

As a county, Alamance County (and, thus, its Board of Commissioners) can only act within the boundaries set forth by the General Assembly. *See High Point Surplus Co. v. Pleasants*, 264 N.C. 650, 654, 142 S.E.2d 697, 701 (1965) (noting that counties "possess only such powers and delegated authority as the General Assembly may deem fit to confer upon them."). Under the Monument Protection Law, the County has no authority to move the Monument. Regardless of some commission members' comments or misunderstandings of their legal ability to move the Monument, the rule of law does not change. At all times, the Monument Protection

Law has required the County to leave the Monument in its current place. Defendants' hands are tied—even if they wanted to move the Monument, they could not.

The General Assembly (under N.C. Const. art. VII, § 1) has authority to grant and rescind counties' powers. However, Plaintiffs did not sue the legislature, which is the entity with the authority to alter the power given to counties to relocate monuments under the Monument Protection Law.

Thus, we conclude Defendants did not violate the Equal Protection Clause by failing to move the Monument.

### B. Alleged Misuse of Taxpayer Money

Next, Plaintiffs argue that Defendants' expenditures violate the constitutional provision that counties may appropriate money "for the accomplishment of public purposes only." N.C. Const. art. V, § 2(7).

"The term 'public purpose' is not to be narrowly construed. It is not necessary that a particular use benefit every citizen in the community to be labeled a public purpose." *Madison Cablevision, Inc. v. City of Morganton*, 325 N.C. 634, 646, 386 S.E.2d 200, 207 (1989) (citation omitted). "Generally, if an act will promote the welfare of a state or a local government and its citizens, it is for a public purpose." *Haugh v. Cnty. of Durham*, 208 N.C. App. 304, 315, 702 S.E.2d 814, 822 (2010). "A tax or an appropriation is certainly for a public purpose if it is for the support of government, or for any of the recognized objects of government." *Green v. Kitchin*, 229 N.C. 450, 455, 50 S.E.2d 545, 549 (1948). "[C]ourts will not interfere with the

exercise of discretionary powers conferred on [a local government] for the public welfare, unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion." *Id.* at 459, 50 S.E.2d at 551.

Here, Defendants spent funds on the law enforcement response to protests at the Monument and on the erection of a fence to protect the Monument. There is no doubt that expenditures for public safety and protection of county-owned property serve a public purpose. Public safety is a primary objective of local government, as carried out by law enforcement, and supports the county's general welfare by maintaining a safe environment for the community. And preventing damage to county-owned property saves the county from paying for repairs later on when the property is damaged. Further, the General Assembly explicitly allows a board of county commissioners "to expend from the public funds of the county an amount sufficient to erect a substantial iron fence" to protect monuments "erected to the memory of our Confederate dead[,]" N.C. Gen. Stat. § 100-9 (2023), indicating that the General Assembly sees this property protection as a public purpose.

Accordingly, it was not an abuse of discretion for Defendants to make such expenditures and no constitutional rights were violated.

### C. Open Courts Clause

Finally, Plaintiffs argue that Defendants violate North Carolina's Open Courts Clause by their "maintenance of the Monument outside the courthouse [which] conveys the appearance of judicial prejudice because it broadcasts officially

sanctioned racial degradation[.]"

The Open Courts Clause of the North Carolina Constitution instructs that "[a]ll courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18.

This Clause was added to the North Carolina Declaration of Rights in 1868. Our Supreme Court has interpreted this provision to require members of the public access to legal proceedings so they can "see and hear what goes on in the courts." *See Virmani v. Presbyterian Health Servs. Corp.*, 350 N.C. 449, 476, 515 S.E.2d 675, 693 (1999). We conclude that the Open Courts Clause does not prohibit the placement of an object of historical remembrance in or around a courthouse, though some may find offense. Indeed, in many courthouses and other government buildings across our State and nation, there are depictions of historical individuals who held certain views in their time many today would find offensive.

In this case, Plaintiffs fail to show they are denied the Clause's guarantees. They do not contend that the Alamance County courthouse is not regularly in session or that legal remedies are being withheld, nor do they contend that trials are closed to the public or that criminal defendants are denied speedy trials. Therefore, we conclude Defendants did not violate the Open Courts Clause.

## III. Conclusion

For the foregoing reasons, we affirm the trial court's order granting summary

judgment to Defendants.

AFFIRMED.

Judges STROUD and ZACHARY concur.